**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**RYAN TAMM**, on his own behalf and on behalf of others similarly situated,

Plaintiff,

v.

**DOG6, LLC d/b/a CAT5 COMMERCE d/b/a TACTICALGEAR.COM** and **GALLS, LLC**,

Defendants.

Case No.: 2:26-cv-01671-JHC

AMENDED CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Ryan Tamm, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of Defendants Dog6, LLC d/b/a Cat5 Commerce d/b/a TacticalGear.com ("Tactical Gear") and Galls, LLC ("Galls") (collectively "Defendants") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendants engage in the precise activity which CEMA prohibits.

4. Tactical Gear and Galls spam Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Defendants' marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Defendants falsely narrow the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7. Plaintiff challenges Defendants' harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in King County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in King County.

## III. PARTIES

10. Plaintiff Ryan Tamm is a resident of King County, Washington.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

11. Defendant Tactical Gear is a limited liability company formed under the laws of Missouri with its principal address at 18167 Edison Ave., Suite. B, Chesterfield, Missouri, 63005-3728.

12. Defendant Galls, LLC is a limited liability company formed under the laws of Delaware with its principal address at 1340 Russell Cave Road, Lexington, Kentucky, 4505.

13. Defendant Galls, LLC maintains a registered agent in the state of Washington, located at 711 Capitol Way S, Suite 204, Olympia, Washington, 98501-1267.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

14. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

15. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

16. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

17. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

18. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

19. In 2012, one study estimated that Americans bear "costs of almost $20 billion



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

20. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

21. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

22. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

23. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

24. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

25. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

26. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

27. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

28. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

29. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

30. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Defendants' marketing emails make false time scarcity claims.**

31. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

32. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

33. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

34. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

35. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

36. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

37. Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

38. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

39. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

40. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

41. These false time scarcity claims are a staple of Defendants' email scheme to compel consumers to purchase its products.

42. Defendant Tactical Gear is an online retailer specializing in apparel and gear for members of law enforcement. The company's merchandise is available online at https://tacticalgear.com/.

43. Defendant Galls, LLC is the registered owner of tacticalgear.com.

44. To advertise its products and encourage online purchases, Defendants spam consumers with emails promoting deals on their products.

45. **Urgent Spam Emails.** Unfortunately for those email recipients, Defendants regularly title their emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

46. For years, Defendants engaged in a consistent pattern of advertising deals on their products that they initially promote through spam emails announcing the offer, promotion, or sale.

47. Once they have hooked consumers on the advertised promotion—often branded with a theme—Defendants use the subject lines of follow-up emails to present the deal as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to make online purchases before Defendants' false "deadline." Then, once the originally advertised "deadline" has passed, Defendants' knowingly extends the promotion to a new end date.

48. While Defendants may present these extensions as if they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

extensions, Defendants compel consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions.

49. This misleading marketing strategy allows Defendants to maximize sales during both the initial promotion, as well as the subsequent extension.

50. Defendants have been employing these deceptive tactics since at least November 2022, when Tactical Gear sent emails promoting its Black Friday sale which offered "up to 25% off."

51. On November 25, 2022, Tactical Gear sent consumers an email with the subject line, "Now > NEVER."

52. This message conveyed to consumers that November 25 was the final opportunity to take advantage of its Black Friday promotion.

53. Two days later, on November 27, 2022, Tactical Gear sent another email stating, "No Leftover Behind: Last Day Deals" continuing the same "up to 25% off" promotion.

54. Thus, the Black Friday discounts did not end on November 25, 2022, as advertised. The artificial "now or never" headline was used create false urgency and pressure consumers into making immediate purchases.

55. Just a few days later, on November 28, 2022, Defendants used similar tactics to advertise Tactical Gear's Cyber Monday sale with an email with the subject line, "Terminating Cyber Monday in 3..2.."

56. The email conveyed immediacy and scarcity—promoting a rapidly approaching deadline for taking advantage of its Cyber Monday deals. But the sense of urgency was false and those deals did not end on November 28, 2022; instead, the same promotion was extended the very next day.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

57. On November 29, 2022, Tactical Gear sent another email announcing, "stupid website glitch – SALE EXTENDED 🤑" continuing the identical promotion.

58. In other words, the supposedly urgent countdown to the termination of Cyber Monday deals was no end at all, but a knowingly false deadline used to create artificial urgency and pressure consumers into making immediate purchases.

59. Tactical Gear's 2023 Black Friday campaign followed the same playbook, but with even more aggressive urgency cues.

60. On November 26, 2023, Tactical Gear sent a mass consumer email with the subject line "PSA: SALE ENDS TODAY! 📢" to advertise its sale of "25% off top brands" and "free shipping on orders over $99."

61. The message conveyed that consumers needed to act immediately on the promotion or lose the opportunity to take advantage of advertised discounts.

62. That representation was false.

63. The very next day, November 27, 2023, Tactical Gear sent another email stating, "Monday Is Better than Black Friday 💻", offering an even greater discount of "up to 76% off" and "free shipping on orders over $99."

64. In other words, the purportedly expiring Black Friday offers did not end—they were increased, rebranded, and carried forward under a different name.

65. Further, on November 30, 2023, Tactical Gear revived the Black Friday offers it purported to terminate days earlier with an email with the subject line, "Black Friday: The ENCORE 💰 👏", again offering consumers "25% off" and "free shipping on orders over $99."

66. By imposing a false "last day" deadline, Tactical Gear created a misleading sense of urgency designed to prompt immediate purchases. What appeared to be a fixed, holiday-based



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

cutoff was entirely artificial and what was presented as a "last day" was, in truth, just another step in a rolling promotion.

67. Tactical Gear used this deceptive practice in July 2024 for its "Christmas in July" sale promoting "20% off top brands."

68. On July 24, 2024, Tactical Gear sent consumers an email with the subject line, "🎄 🕛 Christmas in July: Ending SOON."

69. This message conveyed to consumers that July 24 was the final opportunity to take advantage of this "Christmas in July" promotion.

70. But that representation was not true.

71. The very next day, on July 25, 2024, Tactical Gear sent another email stating, "🎄 😎 Back By Popular Demand 🎄 😎" continuing the same "20% off top brands" promotion.

72. Thus, the "Christmas in July" sale did not end on July 24, 2024, as advertised.

73. A couple of months later, Tactical Gear employed a similar bait-and-switch trick in a promotion offering "20% off Vertx."

74. On September 28, 2024, it sent an email with the subject line, "20% off Vertx (ENDS TONIGHT!) 🌙 💸" explicitly representing that consumers were in the promotion's final hours.

75. This "ends tonight" language conveyed that the window to act was rapidly closing. But the window stayed open.

76. On September 30, 2024, Tactical Gear sent another email—"WHEN SEPTEMBER ENDS ❗"—expanding the "20% off" offer to include even more brands, including Vertx.

77. The prior email's "ENDS TONIGHT!" claim was not a true deadline, but a misleading device to create artificial urgency.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

78. Defendants repeated similar deceptive tactics when promoting Tactical Gear's 2024 Black Friday sale.

79. On Friday November 29, 2024, Tactical Gear sent consumers an email with the subject line, "Now > NEVER" advertising "25% off top brands" for Black Friday.

80. This message conveyed to consumers that November 29 was the final opportunity to take advantage of its Black Friday promotion.

81. The very next day, on Saturday November 30, 2024, Tactical Gear sent another email stating, "BIGGEST 🎇 SALE 🎇 THIS 🎇 YEAR!" continuing the same Black Friday promotion.

82. Thus, the Black Friday discounts did not end on November 25, 2022, as advertised. In fact, Tactical Gear continued promoting its Black Friday sale through December 1, 2024. The artificial "now or never" headline was used create false urgency and pressure consumers into making immediate purchases.

83. Tactical Gear used the same deceptive practice in July 2025 for its "Christmas in July" sale promoting "up to 25% off."

84. On July 22, 2025, Tactical Gear sent consumers an email with the subject line, "Christmas in July ends TODAY! Save up to 25%."

85. This message conveyed to consumers that July 22 was the final opportunity to take advantage of this "Christmas in July" promotion.

86. But that representation was not true.

87. The very next day, on July 23, 2025, Tactical Gear sent another email stating, "Christmas in July EXTENDED 🎁 It's not over yet!" continuing the same "up to 25% off" promotion.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

88. Thus, the "Christmas in July" sale did not end on July 22, 2025, as advertised.

89. Tactical Gear used the same deceptive technique in August 2025, during promotions of its "Summer Sale Event" offering "20% off" merchandise.

90. On August 3, 2025, Tactical Gear sent an email with the subject line, "SUMMER SALE EVENT ENDS TODAY ❗ save 20% now," representing that the promotion would expire that day.

91. Not a subtle suggestion. Tactical Gear urgently promoted a firm, same-day deadline for taking advantage of the "20% off" deal. But that deal did not end on August 3, 2025; instead, the same "20% off" promotion continued through at least August 8, 2025.

92. The very next day, August 4, 2025, Tactical Gear sent another email announcing, "EXTENDED: Summer Sale Event (20% off) 💰" continuing the identical "20% off" promotion.

93. That same "20% off" promotion was still being offered as of August 8, 2025, when Tactical Gear sent another email with the subject line: "Summer savings! Up to 20% off 🔥."

94. In other words, the supposedly fixed "ends today" date was no end at all, but a knowingly false deadline used to create artificial urgency and pressure consumers into making immediate purchases.

95. Another example of the same pattern reappeared during Tactical Gear's "Labor Day Sale," which advertised "up to 25% off" merchandise.

96. On September 1, 2025—Labor Day itself—Tactical Gear sent consumers an email with a subject heading declaring, "Labor Day Sale ends TODAY! Up to 25% off 🔥."

97. This message was designed to create urgency by tying the promotion to the holiday and insisting that consumers act immediately or miss out.

98. That urgency was false and manufactured.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

99. On September 2, 2025, after the supposed "ends today" deadline, Tactical Gear sent another email stating, "Up To 25% Off Isn't Over!" continuing the same sale.

100. The message was clear: what had been framed as a hard stop was, in reality, a continuing journey. The information contained within the subject heading of Tactical Gear's email on September 1 was false and misleading. The promotion was not ending that day.

101. Tactical Gear employed the same misleading "last call" and "ends today" tactics in November 2025 in connection with a promotion offering "20% off sitewide."

102. On November 11, 2025—Veterans Day—Tactical Gear sent an email with the subject line, "Last Call: 20% Off Sitewide Ends TODAY!" and reinforced this message in the body of the email with references to a Veterans Day sale, tying the promotion to that date.

103. This messaging conveyed to consumers that the discount was a time-limited, holiday-specific opportunity that would expire at the end of Veterans Day.

104. That representation was false.

105. The very next day, November 12, 2025, Tactical Gear sent another email stating, "Get Ready for Black Friday - 20% off Friends & Family Sale!" continuing the exact same "20% off sitewide" promotion without any material change.

106. In other words, the purportedly expiring "20% off" sale did not end—it was simply rebranded and carried forward under a different name.

107. By imposing a false "last day" deadline while simultaneously invoking Veterans Day in the body of the original email, Tactical Gear created a misleading sense of urgency designed to prompt immediate purchases. What appeared to be a fixed, holiday-based cutoff was entirely artificial and what was presented as a "last day" was, in truth, just another step in a rolling promotion.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

108. Tactical Gear's Black Friday campaign followed the same playbook, but with even more aggressive urgency cues.

109. On Friday, November 28, 2025, Tactical Gear sent a mass consumer email with the subject line: "Now or Never: Up to 35% off Black Friday Ends Tonight."

110. This message conveyed that consumers needed to act immediately on Black Friday or lose the opportunity to take advantage of advertised discounts.

111. The very next day, on *Saturday*, November 29, 2025, Tactical Gear continued promoting the same offer in an email with the subject line: "We're BACK: Up to 35% off sitewide!" making clear that the Black Friday "35% off" sale had not ended at all.

112. And the day after that, on *Sunday*, November 30, 2025, Tactical Gear again promoted the same discount in an email warning, "FINAL CALL: Up to 35% off sitewide savings!"—further extending the life of the very sale that had supposedly already reached its end.

113. Taken together, these back-to-back emails demonstrate that consumers were not required to make purchases on Black Friday to obtain the advertised 35% off discount; the same promotion remained available through at least November 30, 2025.

114. The repeated "ends tonight" messaging was therefore not a genuine deadline, but a misleading device designed to create artificial urgency and pressure consumers into making premature purchasing decisions.

115. These "extensions" are not done by happenstance. They reveal a coordinated marketing strategy designed to increase consumer urgency about a promotion ending when in fact it is not ending.

116. Tactical Gear used this same bait-and-switch strategy to promote its December 2025 "Flash Sale" offering "30% off" merchandise.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

117. On December 10, 2025, Tactical Gear sent an email stating, "Don't miss it! 30% off a top brand ends TODAY!" signaling that the opportunity would disappear that day.

118. This representation conveyed immediacy and scarcity—hallmarks of a true flash sale. But the sale was neither fleeting nor scarce.

119. On December 11, 2025, Tactical Gear sent a follow-up email: "FLASH SALE EXTENDED. Grab 30% Off Our Favorite Gear."

120. Thus, one day after warning consumers that it was their last chance to access the "30% off" deal, Tactical Gear purported to extend the sale, showing that the information in the December 10 subject line was false and misleading. The false deadline was simply a marketing strategy meant to compel consumers to purchase its products. The supposed one-day opportunity was, in reality, extended without interruption.

121. Not long after, Tactical Gear repeated the bait-and-switch trick in a promotion offering "20% off top brands."

122. On December 20, 2025, it sent an email with the subject line, "Final Hour Finds – 20% off Top Brands!" explicitly representing that consumers were in the promotion's last hours.

123. This "final hour" language conveyed that the window to act was rapidly closing. But the window stayed open.

124. On December 21, 2025, Tactical Gear sent another email—"Still shopping? Take up to 20% off top brands!"—continuing the exact same "20% off top brands" offer beyond that false "final hour."

125. The prior day's "final hour" claim was not a true deadline, but a misleading device to create artificial urgency.

126. These and other examples of the commercial emails that Tactical Gear has sent



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

consumers containing subject lines with false or misleading statements are attached to this Amended Class Action Complaint as Exhibit A.

**C. Defendants know when they send emails to Washington residents.**

127. Sophisticated commercial enterprises like Defendants, which are engaged in persistent marketing through mass email campaigns across the United States, have several ways of knowing where the recipients of their marketing emails are located. The means they employ are peculiarly within their knowledge.

128. First, the sheer volume of email marketing that Defendants engage in puts them on notice that Washington residents would receive its emails. Since 2022, Defendants have been blasting out emails from Tactical Gear at a rate averaging 423 per year, 35 per month and 1 per day.

129. Second, Defendants may obtain location information tied to email addresses when consumers make purchases from their digital platforms, including https://tacticalgear.com/, or otherwise self-report such information to Tactical Gear and Galls.

130. Third, Defendants may obtain location information tied to email addresses by tracking the IP addresses of devices used to open their emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

131. Specifically, Defendants likely use Listrak to manage its email marketing campaigns. Listrak tracks recipients' interactions with marketing emails, including whether an email is opened and whether links within the email are clicked. This platform should allow Defendants to access a list of every email address that was sent a marketing email and determine who viewed the emails and who clicked on any links within them.

132. Defendants are likely able to infer the general geographic location of recipients by



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

state based on their IP address at the time of email open or link click.

133. Fourth, Defendants may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

134. Fifth, Defendants may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

135. Sixth, Defendants may obtain information that the recipients of their marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

136. It is thus highly probable that a seller with the size and sophistication of Defendants employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

### D. Defendants violated Plaintiff's right under CEMA to be free from deceptive commercial emails.

137. Defendants have spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA.

138. For example, Plaintiff received emails containing false or misleading subject lines sent by Defendants, as described above in Section B. These messages were sent to Plaintiff's personal Gmail addresses:

a. Plaintiff received the email described *supra* at ¶ 51 sent on November 25,



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

2022, with the subject line: “Now > NEVER.”

b. Plaintiff received the email described *supra* at ¶ 55 sent on November 28, 2022, with the subject line: “Terminating Cyber Monday in 3..2..”

c. Plaintiff received the email described *supra* at ¶ 60 sent on November 26, 2023, with the subject line: “PSA: SALE ENDS TODAY! 📢.”

d. Plaintiff received the email described *supra* at ¶ 68 sent on July 24, 2024, with the subject line: “🎄 ⏲️ Christmas in July: Ending SOON.”

e. Plaintiff received the email described *supra* at ¶ 74 sent on September 28, 2024, with the subject line: “20% off Vertx (ENDS TONIGHT!) 🌙 💸.”

f. Plaintiff received the email described *supra* at ¶ 84 sent on July 22, 2025, with the subject line: “Christmas in July ends TODAY! Save up to 25%.”

g. Plaintiff received the email described *supra* at ¶ 90 sent on August 3, 2025, with the subject line: “SUMMER SALE EVENT ENDS TODAY ❗ save 20% now.”

h. Plaintiff received the email described *supra* at ¶ 117 sent on December 10, 2025, with the subject line: “Don’t miss it! 30% off a top brand ends TODAY!”

139. The subject lines of these emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals and as further described herein.

140. These emails’ subject lines contained false statements of fact as to the “duration or availability of a promotion.” *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

141. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

class ("Class"):

> All Washington citizens holding an email address to which Defendants sent or caused to be sent any email listed in Exhibit A during the Class Period.

142. Excluded from this definition of the Class are Defendants' officers, directors, and employees; Defendants' parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

143. The Class Period extends from the date four years before this Amended Class Action Complaint is filed to the date a class certification order is entered in this action.

144. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendants sent or caused to be sent during the Class Period to email addresses held by Washington residents.

145. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

146. There are questions of law or fact common to the class, including without limitation whether Defendants sent commercial emails containing false or misleading information in the subject line; whether Defendants sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendants' conduct violated CEMA; whether Defendants' violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendants should be enjoined from such conduct.

147. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class Members share the same statutory rights under CEMA and the CPA, which Defendants violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

148. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

149. Defendants have acted on grounds generally applicable to the Class, in that, among other ways, they engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which they may be enjoined as to Plaintiff and all Class Members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

150. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendants have violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class Member and that Class Member's resulting damages.

151. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

152. Plaintiff incorporates and realleges paragraphs 1–140 above.

153. CEMA provides that "[n]o person may initiate the transmission, conspire with



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

154. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

155. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

156. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents, including because Defendants knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

157. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

158. For Defendants' violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**<u>Second Claim to Relief</u>**

**Violation of the Consumer Protection Act, RCW 19.86.020**

159. Plaintiff incorporates and realleges paragraphs 1–140 above.

160. The CPA provides that "[u]nfair methods of competition and unfair or deceptive



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

161. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

162. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

163. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

164. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

165. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

166. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents.

167. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

168. For Defendants' violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

## VII. JURY DEMAND

169. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendants from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date: August 10, 2026

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli, *pro hac vice*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops, *pro hac vice*
Ian R. Bensberg, *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

Michael C. Tackeff*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
mtackeff@stranchlaw.com

*Counsel for Plaintiff and the Putative Class*

*** Applications for admission *pro hac vice* forthcoming**